UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MIRAMONT MANAGEMENT COMPANY, L.L.C. D/B/A MIRAMONT COUNTRY CLUB, *Plaintiff*, | § § § § | |
| v. | § § | CIVIL ACTION H-08-2188 |
| JOHN SIBBALD ASSOCIATES, INC., DANIEL M. DENEHY AND PAUL SPELLMAN *Defendants*. | § § § § | |

**MEMORANDUM ORDER & OPINION**

Pending before the court is plaintiff Miramont Management Company, L.L.C. d/b/a Miramont Country Club's ("Miramont") motion for remand and for costs. Dkt. 9. After considering the parties' arguments, the appropriate evidence, and the applicable law, the court finds that the motion should be GRANTED.

**I. BACKGROUND**

On June 10, 2008, plaintiff Miramont filed suit in state court in Brazos County, Texas, alleging breach of contract and various torts arising from its search for and hiring of a General Manager. Dkt. 1. In 2006, Miramont contacted defendant John Sibbald Associates, Inc. ("JSA") seeking assistance in locating and hiring a General Manager for Miramont and spoke with defendant Daniel M. Denehy ("Denehy") regarding the services JSA could provide. Miramont contends that Denehy promised he and JSA[1] would review qualifications, perform personality and skills assessments, and conduct background checks for each General Manager candidate. In April of the

---

[1] Denehy's relationship with JSA, e.g. whether employee or independent contractor, is not clear from the record before the court.

same year, Miramont contracted with JSA to provide these services ("Miramont–JSA agreement"). Dkt. 1. After claiming to have performed reviews of each candidate, in November 2006, JSA and Denehy recommended defendant Paul Spellman ("Spellman") to Miramont for the General Manager position. *Id.* At or near this time, Denehy also purportedly communicated to Miramont's Vice President, Stephanie Malechek, that Spellman and Denehy were fraternity brothers. Dkt. 9.

Based on the recommendations of JSA and Denehy, Miramont selected Spellman for the General Manager position. Denehy then facilitated the negotiation of a three-year employment agreement between Spellman and Miramont ("Miramont–Spellman agreement"). Dkt. 1. After hiring Spellman, Miramont became displeased with Spellman's performance and attitude. As a result, Miramont performed its own background check and investigation. Miramont maintains that its investigation revealed Spellman's history of similar performance and attitude problems. Miramont, therefore, asserts that JSA and Denehy wholly or partially failed to perform the activities outlined in the Miramont–JSA agreement or concealed the findings of their investigation, intending to induce Miramont to enter into the Miramont–Spellman agreement. Dkt. 9. Additionally, Miramont argues that Spellman personally failed to disclose his unfavorable employment history and references.

Miramont further alleges that each of the defendants possessed a financial interest in Miramont's hiring of Spellman. Thus, Miramont concludes that Spellman conspired with JSA and Denehy to conceal negative employment references uncovered by JSA and Denehy's investigation with the intent to defraud Miramont. Dkts. 1, 9.

Miramont argues that the misrepresentations made by the defendants were material and that Miramont relied on them when it entered into the Miramont–JSA and Miramont–Spellman

2

agreements. Miramont contends that, as a result of its reliance, it has suffered damages in excess of the jurisdictional amount specified in 28 U.S.C. § 1332(a).[2] Dkt. 1.

Neither party disputes that Miramont is incorporated under the laws of the State of Texas. It is also undisputed that JSA is a foreign corporation,[3] Denehy is resident of Connecticut, and Spellman is a resident of Texas. Dkt. 1. The parties concur that, but for Spellman's joinder in the lawsuit, complete diversity would exist.

In the original state court petition, Miramont asserted claims for: breach of the Miramont–JSA agreement against JSA and Denehy; fraudulent inducement related to the Miramont–JSA agreement against JSA and Denehy; fraudulent inducement related to the Miramont–Spellman agreement against JSA, Denehy, and Spellman; and conspiracy to defraud against JSA, Denehy, and Spellman. The defendants collectively sought removal, alleging Spellman was improperly joined for the purposes of defeating diversity jurisdiction. *Id.*

## II. ANALYSIS

Defendants argue that federal jurisdiction is proper under diversity jurisdiction granted by 28 U.S.C. § 1332. They allege that Spellman was improperly joined,[4] and therefore his citizenship

---

[2] Although both parties concur that the jurisdictional amount of $75,000.00 is met, no insight into the nature of the damages is provided. The parties appear to base their damages on the value of the Miramont–Spellman contract. Dkt. 1. Curiously, the *entire* value of the General Manager contract does not seem to be an appropriate measure of damages, as the costs of hiring a General Manager would have been incurred regardless of whether Spellman or another candidate was selected.

[3] JSA is incorporated under the laws of the State of Illinois. JSA's principal place of business is in St. Louis, Missouri. Dkt. 1.

[4] In the context of removal and remand, improper joinder carries no requirement as to a state of mind, even though case law may use terms like fraud or sham to describe improper joinder. The

3

should be ignored for diversity purposes. In contrast, Miramont argues that Spellman is a valid defendant with causes of action against him that are recognized by Texas courts.

To establish subject-matter jurisdiction predicated on diversity, there must be complete diversity of citizenship among the parties and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332. A case may be removed despite a non-diverse defendant, if that defendant was improperly joined, i.e. was named for the purpose of destroying diversity. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). As the removing party, the defendants bear the heavy burden of demonstrating improper joinder. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). "Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet '[improper]' to the joinder, will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." *Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914).

Defendants can establish improper joinder in either of two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quoting *Travis*, 326 F.3d at 646–47). Because the parties do not dispute the accuracy of the jurisdictional facts, the latter is proper. The court's inquiry should not focus on the *probability* that the plaintiff will prevail on the merits against the non-diverse defendant. Rather, the court seeks only a reasonable *possibility* of recovery against the non-diverse defendant. *See Burden v. General Dynamics Corp.,* 60 F.3d 213, 216 (5th Cir.1995). "If no reasonable basis of

---

term "fraudulent joinder" is often used by the courts; however, in the Fifth Circuit, the preferred term is "improper joinder."

recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed [improper], *unless* that showing compels dismissal of *all defendants." McDonal v. Abbott Laboratories,* 408 F.3d 177, 183 (5th Cir. 2005) (emphasis in original). In the present case, the appropriate inquiry is whether the record contains any evidence to support any of the claims against Spellman.

The Fifth Circuit, in *Smallwood*, endorsed a Rule 12(b)(6)-like inquiry as the preferred method of determining whether joinder is proper. *Smallwood*, 385 F.3d at 573. However, *Smallwood* also recognized that, in limited cases, discrete facts are missing from the plaintiff's pleading, thus making a summary inquiry more useful. *Id.* In these cases, the court, in its discretion, will utilize a summary judgment-like procedure—the alternative method offered by *Smallwood. Id.*; *Hornbuckle*, 385 F.3d at 542 (citing *Keating v. Shell Chemical Co.*, 610 F2d 328, 333 (5th Cir. 1980)). Therefore, the inquiry no longer centers on the plaintiff's state court petition, but on the record as a whole and summary judgment evidence offered by the parties.[5] *Id.* "All disputed issues of fact and any ambiguities of state law must be resolved in the [plaintiff's] favor." *Smith v. Petsmart, Inc.*, No. 06-60497, 2008 WL 2062257, at *2 (S.D. Tex. May 15, 2008) (citing *Travis*, 326 F.3d at 649). However, the summary inquiry is not without limits. "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution on the merits, as distinguished from an analysis of the court's diversity jurisdiction by a

---

[5] The Texas Rules of Civil Procedure, unlike the Federal Rules of Civil Procedure, do not require the pleading of fraud with particularity. Rather, the Texas Rules necessitate only a plain and concise statement of the cause of action sufficient to give notice to the defendant of the claim alleged and relief sought. TEX. R. CIV. P. 45(b). Here, the pleadings are more consistent with the Texas Rules than the Federal Rules; therefore, a summary inquiry proves more useful.

simple and quick exposure of the changes of the claim against the in-state defendant alleged to be improperly joined." *Smallwood*, 385 F.3d at 574.

In its original petition, Miramont asserts two claims that include Spellman as a defendant: fraudulent inducement related to the Miramont–Spellman agreement and conspiracy to defraud Miramont. Dkt. 1. Each claim is addressed to determine whether a reasonable possibility of recovery against Spellman exists.

**A. Fraudulent Inducement Related to the Miramont–Spellman Agreement**

Under Texas law, "[f]raudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001). Therefore, in addition to proving the existence of a contract, the plaintiff must also demonstrate each element of fraud: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Because the parties do not dispute the existence of the Miramont–Spellman agreement, the inquiry focuses on the elements of fraud under Texas law.

Although Miramont unequivocally asserts that JSA and Denehy made affirmative false representations regarding Spellman's qualifications and background, it is not clear whether

6

Miramont also attributes the representations to Spellman personally.[6] A conclusory statement that, at best, ambiguously references Spellman individually and alleges neither a specific representation nor the subject matter of the representation is insufficient to establish that a cause of action against Spellman is reasonably possible.

Spellman's liability is also premised on his alleged failure to disclose his unfavorable employment history. A failure to disclose constitutes fraud only if a duty to disclose the information exists, and the party deliberately remains silent. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). "Whether a duty to disclose exists is a question of law." *Id.* A duty to disclose generally arises when a confidential or fiduciary relationship exists between the parties. Because Miramont failed to either clearly allege that Spellman affirmatively and falsely misrepresented his qualifications or that he was subject to a duty to disclose the omitted information, a reasonable possibility of recovery against Spellman has not been demonstrated.

**B. Conspiracy to Defraud Miramont**

Although a reasonable possibility of recovery against Spellman is not evident based on his own actions or omissions, Miramont also contends that JSA, Denehy, and Spellman conspired to conceal Spellman's employment history in order to induce Miramont to enter into the Miramont–Spellman agreement. Accordingly, Spellman may be liable as a co-conspirator.

In Texas, civil conspiracy is a derivative tort; therefore, the plaintiff must plead and prove the underlying tort claim upon which the conspiracy is based. *Hinojosa v. Guidant Corp.*, 2005 WL

---

[6] A single statement in the original state court petition indicates that "[d]efendants made material representations to [p]laintiff in order to induce [p]laintiff to enter into the [Miramont–Spellman agreement] . . . ." Dkt. 1. The reference to "defendants," rather that specifically named defendants, as is done elsewhere in the petition, could be read to include Spellman.

7

2177212, at *4 (S.D. Tex. Sept. 7, 2005) (citing *Grizzle v. Texas Commerce Bank*, 38 S.W.3d 265, 285 (Tex. App.—Dallas 2001) *rev'd in part on other grounds* 96 S.W.3d 240 (Tex. 2002)). ("Conspiracy cannot be based on non-tortious conduct, such as breach of contract . . . .")). "All members of a conspiracy are liable for their co-conspirators's wrongful acts. And, even if a co-conspirator's acts occurred before the conspiracy formed, all the conspiring parties are liable for those acts, as long as those acts are made in furtherance of the 'common goal' of the conspiracy . . . ." *Bentley v. Bunton*, 94 S.W.3d 561, 619 (Tex. 2002). Applying the law to the instant case, there must be a reasonable possibility of a claim of fraud against one or more the defendants. It must then be determined that a claim of civil conspiracy, which includes Spellman, is reasonably possible. If both are reasonably possible, Spellman is not improperly joined.

     Applying the aforementioned elements of fraud to the alleged conduct of JSA and Denehy, recovery in a claim of fraud is reasonably possible. Neither party disputes that Spellman was identified as a General Manager candidate by JSA and Denehy. Dkts. 1, 3. Miramont's assertion that JSA and Denehy misrepresented the qualifications and background of Spellman is supported by the purported evidence of Spellman's adverse employment history unearthed during Miramont's post-hire investigation. Dkt. 1. If JSA and Denehy recommended Spellman for the General Manager position without conducting the promised inquiries, as alleged, their recommendation could be made, at the very least, with reckless disregard for its truth. Alternatively, if the recommendation was made with knowledge of Spellman's employment history and the pertinent information was concealed or distorted, as alternatively alleged, it could be found that the misrepresentation was made knowingly. Recommendations and statements regarding Spellman's employment history would be material to Miramont's hiring decision. Miramont contends, and JSA and Denehy refute,

8

that Miramont actually communicated its "high standards" and hiring criteria to Denehy at the outset of the selection process. Dkts. 1, 3. Further, Miramont maintains that it actually relied upon JSA and Denehy's recommendation in making its selection. Dkt. 1. Miramont's reliance is evidenced by the fact that Spellman was in fact hired as the General Manager. Miramont suggests that the defendants shared a financial incentive in Miramont's hire of Spellman and also that a friendship or social connection existed between Denehy and Spellman. Dkt. 9. Either could give rise to a finding that JSA and Denehy intended to induce Miramont to enter into the Miramont–Spellman agreement or received benefits from the Miramont–Spellman agreement. As a result of Spellman's hire, Miramont maintains that it incurred damages based on the contract value of the Miramont–Spellman agreement. Dkt. 1. Miramont has plead a claim of fraud with a reasonable possibility of recovery against JSA and Denehy.

However, in order to state a claim against Spellman, Miramont must also establish a civil conspiracy by showing: "(1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more unlawful, overt acts; and (5) proximate damages." *Duzich v. Advantage Finance Corp.,* 395 F.3d 527, 530 (5th Cir. 2004). The conspiracy may involve an unlawful purpose or unlawful means of achieving a lawful purpose. *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996). Proof of a conspiracy does not require direct evidence. *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1969). Although conspiracies must often be inferred from circumstantial evidence, "vital facts may not be proved by unreasonable inferences from other facts and circumstances." *Id.* "[A] vital fact may not be established by piling inference upon inference." *Id.*

9

Miramont has alleged each element of a civil conspiracy. "The general rule is that conspiracy liability is sufficiently established by proof showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention, or purpose of the alleged conspirators." *Int'l. Bankers Life Ins. Co. v. Holloway*, 368 S.W2d 567, 581 (Tex. 1963). Miramont contends that JSA, Denehy, and Spellman collaborated to conceal Spellman's inauspicious employment history in order to induce Miramont to enter into the employment agreement with Spellman. A shared financial interest, the personal relationship between Denehy and Spellman, JSA and Denehy's recommendation of Spellman for the position, and Denehy's facilitation of the Miramont–Spellman agreement could give rise to an inference of a common design or intent. As previously discussed, if the allegations of fraud are established, which is reasonably possible, the alleged conduct of JSA and Denehy, if proven, would further the conspirator's objective. Miramont maintains that, as a result of the concerted actions of the defendants, it has suffered injury. Dkt. 1. Therefore, resolving questions of law and fact in favor of Miramont, Miramont has asserted a claim of civil conspiracy with a reasonable possibility of recovery. Moreover, because conspirators are liable for the acts of their co-conspirators undertaken in furtherance of the conspiracy, Miramont also states with reasonable possibility a claim against Spellman as a co-conspirator. Therefore, Spellman is not improperly joined.

### III. CONCLUSION

Federal courts are courts of limited jurisdiction. "[T]he effect of removal is to deprive the state court of an action properly before it, [therefore] removal raises significant federalism concerns.

. . ." *Ameen v. Merck & Co.*, 226 Fed. Appx. 363, 368 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 365–66 (5th Cir.1995)) (alternations in original) (internal quotation omitted). "[A]ny doubt as to the propriety of removal should be resolved in favor of remand." *Id.* Miramont has plead and stated a claim for relief. While proving its claim is another matter, until jurisdiction is established, the merits of the case cannot proceed before this court. Ultimately, the high burden of demonstrating improper joinder, i.e. no reasonable possibility of recovery, rests with the defendant. *See Smallwood*, 385 F.3d at 574 ("Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."). This burden has not been met. Accordingly, the plaintiff's motion to remand and for costs is GRANTED.

  Signed at Houston, Texas on August 26, 2008.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY